**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>v.<br><br>Loren Joel McReynolds,<br><br>                    Defendant. | No. CR-19-8245-01-PCT-DGC<br><br>**ORDER** |

Defendant Loren Joel McReynolds filed two *pro se* motions to suppress evidence, and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Docs. 93, 94. The motions challenge federal and state search warrants executed simultaneously at his residence on September 7, 2017. Defendant argues that affidavits used to obtain the warrants contained "numerous false or misleading representations, including omissions, which were made intentionally or with reckless disregard for the truth." Docs. 93 at 1, 94 at 1. The government has responded (Docs. 98, 99) and the Court held an evidentiary hearing on June 4, 2020 (Doc. 104). For reasons stated below, the Court will deny both motions.

**I.    Legal Standard.**

Search warrants may be issued upon a showing of probable cause, which usually is made by an affidavit of a law enforcement officer. "The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances

set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). There is a "presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. A defendant may challenge a search warrant affidavit by showing that it contains intentionally or recklessly false statements and would not, without the falsities, be sufficient to show probable cause. *Id.* at 155-56.

## II. Federal Warrant (Doc. 94).

On September 6, 2017, National Park Service Special Agent Kyler Carpenter submitted a search warrant application and affidavit for Defendant's residence and vehicles. Doc. 98-1. Magistrate Judge Michelle Burns signed the search warrant the same day. *Id.* The warrant authorized a search for a single big horn sheep skull, and was executed with a Coconino County warrant on September 7, 2017.

Defendant contends that the sheep skull was not contraband because he obtained permission from the Arizona Game and Fish Department ("AGFD") to take it. Doc. 94 at 4-6. The government has dismissed the only count of the indictment related to the sheep skull, and states that it has no intent of using the skull as evidence at trial. Doc. 98 at 1-2. On the basis of this assurance, the Court will deny the motion to suppress the federal warrant as moot. *United States v. Kahre*, 737 F.3d 554, 565 (9th Cir. 2013).

## III. State Warrant (Doc. 93).

### A. Background.

On September 5, 2017, AGFD Investigator Clint Adams asked an Arizona state court to issue a search warrant for Defendant's residence. Doc. 99-1. Adams's affidavit alleged numerous violations of state law, including: (1) exceeding the annual bag limit for deer in 2012, 2013, and 2015; (2) killing a deer in Grand Canyon National Park in 2013; and (3) killing deer while trespassing on the Perrin Ranch in 2015. The affidavit also detailed Defendants' criminal conduct during a 2017 undercover operation, including his

killing of protected wild burros and his illegal possession of a firearm and ammunition despite being a convicted felon. *Id.* at 2, 6-10. A state court judge issued the warrant, it was executed on September 7, 2017, and it produced evidence relevant to this case, including the shoulder mount of the deer allegedly killed in the National Park, a rifle and ammunition, and digital media containing evidence that corroborates allegations against Defendant. Doc. 99 at 2.

Defendant contends that the Adams affidavit contained material false statements and omissions. Doc. 93 at 1. He focuses on portions of the affidavit that address the alleged taking of two deer in 2012 and two deer in 2015, but the government stated during the evidentiary hearing that it does not intend to present evidence at trial related to these takings. As a result, the Court will deny as moot Defendant's arguments on the 2012 and 2015 takings.

Defendant also challenges portions of the affidavit used to search for evidence of the alleged 2013 taking of a deer in Grand Canyon National Park, and the presence of firearms and ammunition at Defendant's residence. The Court will address these issues separately.

**B.    Grand Canyon National Park Deer.**

Defendant asserts that Investigator Adams deliberately or recklessly misled the state court with regard to a deer Defendant is alleged to have killed in Grand Canyon National Park in September 2013. Adams's affidavit included the following evidence related to that incident:

- On or about September 3, 2013 McReynolds shot and killed a large non-typical mule deer buck which was posted on the online forum "coueswhitetail.com" and on his "Mac Outfitters" Facebook account.

- The buck has very unique antler conformation and was known by numerous people including a tour guide in the Grand Canyon National Park (GCNP) and Game and Fish Officer Colby Walton, to reside within the boundaries of GCNP and near Mather Campground. Officer Walton had seen the deer just a couple of days prior within GCNP.

- There are at least two videos on YouTube which depict the deer within GCNP and several photos of the deer were submitted to the AGFD's Operation Game Thief program depicting the deer on GCNP as late as August 28, 2013.

- A confidential reporting party (CRP) called the AGFD's Operation Game Thief hotline wishing to report unlawful activity by Loren McReynolds. Investigator Adams met with the CRP and was able to corroborate information that the CRP gave with information that Investigator Adams already knew. During that interview, the CRP said that McReynolds bragged about killing the deer in GCNP in front of several tourists without the tourists knowing about it. The CRP also reported seeing a picture of the freshly killed buck on McReynolds' cell phone with a building matching the color of GCNP buildings in the background.[1]

- On May 10, 2017, Investigator Adams and Special Agent Kyler Carpenter of the Department of the Interior interviewed Britnee Bachstein regarding the deer taken in GCNP. Bachstein was dating McReynolds at the time and was with McReynolds when the deer was killed. Bachstein stated the deer was in fact shot by McReynolds within the boundaries of GCNP in an area where there were a lot of tourists. McReynolds shot the deer in the evening and left it. McReynolds and Bachstein returned before dawn the next morning to retrieve the deer and take it off of GCNP to take pictures of McReynolds with the deer.

- Video taken by undercover officers on January 9, 2017 shows the shoulder mount of the buck is present in [McReynolds's residence].

Doc. 99-1 at 7-8.

Defendant attacks the credibility of Joshua Palmer, the confidential reporting party. Defendant asserts that Palmer was motivated to lie about Defendant because Defendant had evicted Palmer from Defendant's home (where Palmer had been a renter) and had defeated Palmer's effort to obtain a restraining order against Defendant. Doc. 93 at 6. Defendant argues that Palmer's statement to investigators "is simply not credible" because

---

[1] Joshua Palmer was the confidential reporting party. He died in December 2017. Doc. 99 at 7.

- 4 -

1  it was made with the intent to seek revenge. *Id.* at 7.  But aside from asserting that Adams
2  should have known that Palmer was not telling the truth, Defendant presents no evidence
3  that Adams knew or had reason to know Palmer was lying.

4        Defendant suggests that Adams should have known of the landlord-tenant dispute
5  between Defendant and Palmer. *Id.* at 11.  But Defendant does not argue that the dispute
6  or Palmer's effort to obtain a restraining order were within the scope of the deer-killing
7  investigation.  And in any event, incomplete investigations typically are not a basis for
8  finding a search warrant affidavit invalid.  An "affidavit may support probable cause even
9  if the government fails to obtain potentially dispositive information." *United States v.*
10 *Gourde*, 440 F. 3d 1065, 1073 n.5 (9th Cir. 2006) (citations omitted) 2006) (citing *United*
11 *States v. Dale*, 991 F.2d 819, 844 (D.C. Cir. 1993) ("failure to investigate fully is not
12 evidence of an affiant's reckless disregard for the truth" and "probable cause 'does not
13 require an officer to exhaust every possible lead, interview all potential witnesses, and
14 accumulate overwhelming corroborative evidence'")).

15       Defendant also challenges Adams's reliance on statements by Brittnee Bachstein,
16 Defendant's former girlfriend, about the killing of the deer within the National Park. *See*
17 Doc. 93 at 7-8.  Defendant asserts that Bachstein did not know the Park boundaries and
18 was not present when the deer was killed.  These facts are true, but Bachstein clearly
19 provided enough information to suggest that the deer was killed in the National Park.  She
20 told Adams that in September 2013 she and Defendant were hunting near the Park all day;
21 they drove to an area where they could use restrooms near the end of the day; there were
22 paved roads, parking turnouts, and many tourists in the area taking photos of wildlife;
23 Defendant saw the deer in the area where the tourists were located, got excited, got out of
24 the truck, and told Bachstein to return after she had used the restroom; when she returned,
25 Defendant jumped in the truck and said they should leave; they camped for the night in an
26 area 15 or 20 minutes away, during which time Defendant spoke excitedly about how good
27 this would be for his guiding business; they returned to retrieve the dead deer early the
28 following morning, before sunrise, from its location near the paved road; they drove the

1  deer in Defendant's truck to a different location in the forest where they photographed it
2  and Defendant skinned it; and although she did not know precise boundaries, Bachstein
3  thought they were in the Park when Defendant killed the deer. Doc. 99-5 at 22-34. In fact,
4  Bachstein never told anyone about these events because she was worried about the
5  consequences that could arise from killing a deer within the National Park. *Id.* at 22.

6  Defendant does not dispute that Bachstein made these statements, and Adams
7  reasonably could have concluded from the statements that Bachstein and Defendant were
8  in the National Park when the deer was killed. Adams testified that Bachstein's description
9  of the two-lane paved road, with frequent turnouts and lots of tourists, in the area where
10 the deer was killed (*id.* at 24, 30), matched the description of the road within the Park where
11 the deer was known to frequent. Defendant has not shown that Adams knew or had reason
12 to know that his affidavit statements about Bachstein were false.

13 Defendant spent much time at the evidentiary hearing presenting evidence that he
14 did not kill the deer, asserting that Bachstein could have mistaken the town of Tusayan,
15 which is just outside the Park boundaries, for an area within the Park; the deer had
16 previously been seen within the Park some two miles from the area where it allegedly was
17 killed, a distance far enough to reach outside Park boundaries if the deer travelled south
18 from where it usually was seen; a 2013 initial investigation into the deer's killing failed to
19 produce probable cause; Forest Service personnel were unable to identify Defendant's
20 truck on surveillance videos; and metadata from the photograph taken of the dead deer
21 showed the location to be outside of the Park. But evidence that Defendant did not commit
22 the crime, while certainly relevant at trial, does not show that Adams knowingly or
23 recklessly provided false information in the search warrant affidavit. *See Franks*, 438 U.S.
24 at 155-56. The mere possibility that Bachstein might have been mistaken about their
25 location does not show that Adams knew or should have known her statement was
26 inaccurate. The fact that the investigation initially was unsuccessful in producing evidence
27 against Defendant does not mean that the evidence developed later through the 2017
28 interviews of Palmer (Doc. 99-2) and Bachstein (Doc. 99-4) could not provide probable

cause for a search warrant. And the fact that the deer photo was taken outside the Park is consistent with Bachstein's statement that Defendant drove the deer to another location before photographing it. *See* Doc. 99-5 at 22.

Defendant has not presented evidence from which the Court can conclude that Adams knew or should have known his affidavit statements about the Grand Canyon deer were false. And probable cause could have been provided by either the statement of Palmer or the statement of Bachstein – both were not required. When added to the undisputed evidence that others had seen the deer inside the Park only days before it was killed and the fact that the mounted deer was found at Defendant's house, either statement would be sufficient to satisfy the "fair probability" standard for probable cause. *Gourde*, 440 F.3d at 1069. Defendant has provided no basis for suppressing the evidence related to the alleged Grand Canyon deer kill.

### C.     **Firearms and Ammunition Charges.**

Defendant alleges that Adams deliberately or recklessly conveyed falsehoods about Defendant's possession of firearms and ammunition. Adams presented the following evidence in his affidavit: (1) Defendant is a convicted felon and prohibited possessor; (2) during a hunt with undercover agents in January 2017, Defendant possessed a rifle and fired it multiple times, including to shoot at a federally protected wild burro; (3) the rifle used by Defendant during the hunt was found in his truck during a search in January 2017; (4) Defendant told the undercover officers that he had other rifles for hunting; (5) the confidential source, Palmer, told Adams that Defendant had firearms believed to be stored at his residence; and (6) a digital photograph seized from Defendant and taken from his residence shows a rifle case sitting on a floor next to three deer racks. Doc. 99-1 at 9-10. Of these six assertions, Defendant challenges only the fourth and fifth – Defendant's alleged statement to undercover officers and Palmer's report of firearms. Doc. 93 at 11-12.

The undercover officers took a guided hunt with Defendant in January 2017 and saw him possess and discharge a rifle on multiple occasions. Doc. 99-1 at 9. Adams testified during the evidentiary hearing that the offices reported that Defendant said he

possessed other firearms. Defendant disputes this claim, citing two undercover videos made by the officers in which he describes the .260 rifle he took on the hunt as a gift he bought for his girlfriend. Doc. 93 at 11. Defendant argues that he expressly denied having any other rifles. *Id.* But Defendant presented no evidence that the videos taken during the hunt capture every conversation he had with the undercover officers over the course of several days, and the Court found Adams credible in his testimony about what the officers told him. Defendant has not shown Adams's statements about the undercover officers' report to be knowingly or recklessly false. *See Franks*, 438 U.S. at 155-56.

Palmer was interviewed by Forest Service Special Agent Fong on June 22, 2017, and stated that "there were 4 or 5 rifle cases and a hard case with scopes in them in [Defendant's] barn on the bottom floor on the shelf along the left side of the wall." Doc. 99-2 at 5. Adams testified that he inferred the presence of rifles from the report that there were rifle cases and scopes in Defendant's possession. This inference is reasonable. People usually do not possess rifle cases and scopes without also possessing rifles. Defendant also challenges Palmer's credibility based on their rental dispute, but again presents no evidence that Fong or Adams knew or should have known about the dispute.

Defendant has not shown that Adams knowingly or recklessly made false statements about Palmer's interview. And even if Palmer's statement was excluded from the search warrant affidavit, the other five items of evidence presented in the affidavit were sufficient to establish probable cause to search for weapons and ammunition at Defendant's home.[2]

**IT IS ORDERED:**

1. Defendant's motion to suppress evidence obtained through the federal search warrant (Doc. 94) is **denied** as moot.

---

[2] Defendant questioned Adams about statements made by Bachstein regarding Defendant's possible possession of guns – that she thought Defendant possessed guns but never saw them. This evidence is not relevant because Adams did not rely on Bachstein's statements in the search warrant affidavit. *See* Doc. 99-1 at 9-10.

2. Defendant's motion to suppress evidence obtained through the state search warrant (Doc. 93) is **denied** as moot in part and otherwise **denied** on the merits.

Dated this 8th day of June, 2020.

David G. Campbell
Senior United States District Judge